## IRWIN HAAS
### vs.
## ALFRED WILLMAN

| Superior Court | New Haven County | File #45360 |
|---|---|---|

Present: Hon. CARL FOSTER, Judge.

Alexander Winnick,                    Attorney for the Plaintiff.

D. L. O'Neill,                    Attorney for the Defendant.

See **Cohen vs. Willman,** 4 Connecticut Supplement, 96.

## MEMORANDUM FILED JUNE 27, 1936.

FOSTER, J. The plaintiff claims that on August 26th, 1934, at about the hour of 8:40 P. M., he was walking on the highway in the Woodmont Section of Milford, and, while so walking, the defendant drove an automobile into him, causing him personal injury. In order to recover a judgment, the plaintiff must prove by a fair preponderance of the evidence that the defendant was guilty of negligence that was a proximate cause of his injuries and that he himself was free from contributory negligence in the premises.

The locus is of such a nature as to be difficult to clearly portray in words. Even the map prepared by Frederich C. Hahn, a civil engineer of considerable experience in court work, is very unsatisfactory. It is accurate in so far as it purports to portray objects, but it is lacking in several important details that the engineer should have observed, and it is misleading. Particularly, it fails to show lights on certain pillars; it fails to show the gateway through which the defendant entered the highway; then it shows an opening between the easterly pillar and the fence which is of no importance, but which might be mistaken for the space through which the defendant entered the highway.

In order to reach a proper conclusion we must describe the locus in general terms and, for more accuracy, refer to the map, unsatisfactory as it is, and to the photographs in evidence.

Abigail Street at Woodmont runs generally east and west. Near the entrance to Mr. Poli's home it curves so that from such point it runs north-east and north-west. I will speak of it as running east and west. The portion of the highway intended for vehicular traffic is twenty-six feet wide and south of such portion, immediately adjoining it, is a cement sidewalk. There is no sidewalk on the north side of the highway. The entrance to Mr. Poli's home is in the form of a semi-circle and the diameter of such semi-circle is coincident with the south edge of the travelled portion of the highway. The

sidewalk does not extend along the diameter of such semi-circle but stops at the circumference, and west from the most easterly point of the circumference and west from the most westerly point. From this situation it follows that one walking from a point west of the entrance to a point east of the entrance must, in passing the entrance to Mr. Poli's home, walk upon that portion of the highway intended for vehicular traffic, or must walk upon that portion of the highway within the semi-circle, or must walk upon Mr. Poli's land within the semi-circle.

Immediately east of Mr. Poli's home is the home of Mr. Pickett. From his home egress to the highway is gained by a passage-way and gateway running north, the gateway being a few feet east of the most easterly point of the semi-circle. Persons coming out of such gateway into the travelled portion of the highway must cross the sidewalk.

In the early evening of the day in question the defendant called at the home of Mr. Pickett. He parked his Ford Automobile in Mr. Pickett's yard facing south. Later, the automobile of Mr. Pickett was parked facing south just behind that of the defendant. About 8:40, the defendant, another caller, Mr. Redfield, Miss Pickett and her sister Mrs. Fletcher decided to go to the moving pictures in Milford Center about four miles away. Upon coming out of the house Mrs. Fletcher and Mr. Redfield entered Mr. Pickett's automobile, and Miss Pickett and the defendant entered the defendant's automobile. The defendant could not move his automobile until that of Mr. Pickett was moved out of the way; and, moreover, as the young people were leaving, Mr. Pickett requested his daughters to put his automobile in the garage, which was located on Abigail Street several hundred feet west of the gateway. Mrs. Fletcher backed Mr. Pickett's automobile out of the premises onto the highway, upon reaching which she continued to back it in an easterly direction some little distance to a point at or just east of the electric light pole shown on the map. Upon this pole was burning an electric light, the strength of which does not appear in evidence. There, with her headlights burning, she stopped facing west, waiting for the defendant to come out into the highway. The defendant, with Miss Pickett sitting at his right, backed his automobile out of the gateway at a speed of five to seven miles per hour and, when reaching the highway, backed in a generally west-

erly direction, curving to the south into the semi-circular entrance to Mr. Poli's home. There he stopped, shifted his gears and started ahead in a westerly direction on the highway, followed by Mrs. Fletcher and Mr. Redfield in Mr. Pickett's automobile. They put Mr. Pickett's automobile in the garage, all four entered the defendant's automobile, and then went on to the moving pictures and returned later in the evening.

Just before the two automobiles were backed out of Mr. Pickett's premises the plaintiff was walking east on the sidewalk at a point west of Mr. Poli's entrance. He was accompanied by his son about ten years of age, who was walking at his side, and by one Cohen, who was walking two or three feet in front of him. The plaintiff was pointing out to Cohen the home of Mr. Poli, looking toward it and talking about it. The three reached the semi-circle and continued to walk east on that portion of the semi-circle that would have been the sidewalk, had the sidewalk been extended across the semi-circle. The defendant's automobile struck the plaintiff and knocked him to the ground. It did not run over him because it was just stopping to turn and proceed west. At this time Mr. and Mrs. Rich and their daughter were walking west on the sidewalk east of the semi-circle and saw the automobile strike the plaintiff and knock him down.

Certain subsidiary facts in this case seem peculiar at first thought but, upon consideration, are not difficult of satisfactory solution. The defendant, Mr. Redfield, Mrs. Fletcher and Miss Pickett did not see the plaintiff, nor did they know that the defendant had struck him. **Of this I have no doubt.** It was 8:40 P.M. on August 26th—dark. The light on the pole and the lights on the pillars of Mr. Poli's entrance were not strong. The headlights of Mr. Pickett's automobile were burning but did not happen to disclose the plaintiff and his companions. Mr. and Mrs. Rich and their daughter were in a part of the highway not illuminated. Moreover, the defendant and his companions had their minds on putting Mr. Pickett's automobile in the garage and on getting to the theatre four miles away by nine o'clock. If there was any outcry by the plaintiff or either of his companions it came from behind the defendant's automobile and was not heard. It is also to be considered that the plaintiff was not so injured as to cause him acute pain.

The plaintiff walked back to his temporary home and called

a physician the next day.

The defendant in getting out of Mr. Pickett's premises was backing his automobile; he backed it across the sidewalk; he continued to back it into the semi-circle across what might be called the imaginary sidewalk. I emphasise that he was backing his automobile; he was not going forward. He did not have the benefit of his headlights to see what was before him. Twice he crossed an area where pedestrians might be anticipated to be. He and his companions saw no one. Assuming that the plaintiff and his companions were in the semi-circle, the defendant should have seen them.

Reasonable care is that care which a reasonably prudent person would use under the circumstances in question. Circumstances may be such that reasonable care is a very high degree of care. The defendant knew, or should have known, that pedestrians might be where he was backing his automobile.

It is suggested by the defendant that the plaintiff and his companions were not where they say they were or they would have been seen by the former. This does not logically follow. The fact that the plaintiff and his two companions were able to describe the actions and the course of the defendant in backing his automobile out of Mr. Pickett's premises is conclusive evidence that they were where they say they were. The testimony of Mr. and Mrs. Rich and their daughter, while generally speaking of little value, corroborate the plaintiff on this point. The testimony of the plaintiff's son—now twelve years of age—was most credible and creditable. His testimony and that of his father settle the question that the plaintiff was knocked down. The testimony of Cohen, though untrue as to his own damage, corroborates the testimony that he was there and was knocked down. If this were not so, he would not have immediately secured the names of the Richs as witnesses as he did. The institution of this action is some corroboration of the fact that the plaintiff was struck by the defendant. The blow was so light that the defendant and his companions did not know of the accident, or even of the presence of the plaintiff.

The plaintiff was guilty of no contributory negligence in the premises. He was walking where pedestrians were accustomed and expected to walk at that place. True, he did not see Mr. Pickett's automobile. He was struck almost at

the same instant that the headlights of Mr. Pickett's automobile would have been turned toward him. The noises made by moving automobiles are so continuous that in these days we scarcely hear them. As the defendant's automobile came toward him, only its tail lights were toward him and these only for an instant. Though it was moving slowly, it had not far to travel to strike him and it was continuously turning in a circle. It cannot be held that the plaintiff should have anticipated an automobile backing into that semi-circle as he walked across it, conversing with his friend and his son.

I find the plaintiff has proved the legal liability of the defendant for his injuries.

So now we come to the serious and very difficult question of the measure of the plaintiff's damage.

It is conceded that in 1923 the plaintiff suffered an attack of encephalitis, commonly known as sleeping sickness. This disease confined him to his bed at that time about one and a half years. Before the onset of this disease he had been an accountant. After the period of one and a half years' confinement to bed, he gradually improved to such an extent that he was able to work in the office of a relative, for which he received $15. a week. For a period of years prior to the collision here in suit he had been in a chronic state of what is known as "post-encephalitis". He had what is termed a "Parkinsonian syndrome", which is a tremor similar to that of Parkinson's disease. He had a tremor of one hand and arm; he shuffled in his gait; he had difficulty in speech; his eyes did not react normally to light. Notwithstanding this condition, he was able to do some work in an office. His condition before the collision was not only chronic, but it was also progressive. It was a condition that might be made worse by any kind of shock to the nerves. The blow of the automobile against him was so slight that the occupants of the automobile did not feel any shock, but in his weakened condition it knocked the plaintiff to the ground, slightly injured his left knee and right ankle and was a shock to his nerves. As a direct and proximate result of the blow of the automobile upon him, his nervous system was injured and he suffered a condition of prostration. He has not been able to do any work since that time. How much of his present condition is due to the progression of the post-encephalitis and how much is due to the blow of the automobile, physicians called as wit-

nesses do not venture to offer any positive opinion. Assuming his condition immediately before being struck by the automobile to be the normal condition of the plaintiff at that time, there can be no doubt that the blow of the automobile made such condition worse for a long period of time. His condition is such now as to excite sympathy and lead to an award of heavy damages. It must not be forgotten, however, that the burden of proof of his damages rests upon the plaintiff.

I find the fair compensation for the damage that the plaintiff has proved by a fair preponderance of the evidence was proximately caused by the negligence of the defendant, including all expenses in attempting to effect a cure of his injuries so caused, is $1500.

Judgment is rendered that the plaintiff recover of the defendant damages of $1500.